UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  20-CV-60750

ALLEN FLOYD, individually, and K.F.,
a minor child, by and through ALLEN FLOYD,
his father and natural guardian,

   Plaintiffs,

v.

JAMES CADY, individually,
DEBRA BRIDGMAN, individually, and
GREGORY TONY, as
SHERIFF of BROWARD COUNTY, Florida,

   Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

### I. Introduction

The Complaint fails to state a claim for which relief can be granted, and in the alternative, should be dismissed under qualified immunity. The Deputies had reasonable suspicion to stop and question the Plaintiff, Floyd, who escalated the investigation by unlawfully refusing to produce identification.  There were no violations of any clearly established constitutional rights. Additionally, the Deputies did not act with malice, acted within the scope of their discretionary duty and employment, and are equally entitled to immunity on that basis. Accordingly, all Defendants move to dismiss the Complaint.

### II. Plaintiff's Factual Allegations

The Plaintiff filed a nine-count Complaint for himself and his minor child against Defendants, Deputy James Cady, Deputy Debra Bridgman, and Sheriff Gregory Tony, in his

official capacity as Sheriff of Broward County. The Complaint alleges the following causes of action:

Count I - Violation of 42 U.S.C. § 1983 for Unlawful Seizure of Plaintiff Allen Floyd against Deputy Cady;

Count II - Violation of 42 U.S.C. § 1983 for Unlawful Seizure of minor child Plaintiff K.F. against Deputy Cady;

Count III - Violation of 42 U.S.C. § 1983 for Unlawful Seizure of minor child K.F. against Deputy Bridgman;

Count IV - Violation of 42 U.S.C. § 1983 for First Amendment Retaliation against Deputy Cady;

Count V - Violation of 42 U.S.C. § 1983 for Procedural Due Process against Deputy Cady;

Count VI - Violation of State Law Battery Claim against Gregory Tony, as Sheriff of Broward County, Florida (for conduct of Deputy Cady);

Count VII - Violation of State Law Battery Claim against Deputy Cady;

Count VIII - Violation of State Law Battery Claim against Gregory Tony, as Sheriff of Broward County, Florida (for conduct of Deputy Bridgman);

Count IX - Violation of State Law Battery Claim against Deputy Bridgman.

As the Plaintiff alleges, on July 25, 2017, Deputy Cady and Deputy Bridgeman were the first to be called to the Red Roof Inn located at 2469 State Road 84, Dania Beach, Broward County, Florida. [DE 1, ¶ 10]. The Deputies were advised that the Plaintiff, Floyd, along with Eltonisha Laquicia Clark ("Clark"), and Johnnymae Davis Dardy ("Dardy"), had been asked to leave the property after being accused of damaging the television in their hotel room. [DE 1, ¶¶ 13-14]. When the Deputies arrived, Clark had already left the premises to travel home to Miami with the child's safety seat in her vehicle. [DE 1, ¶ 17]. Floyd and Dardy had called a Lyft vehicle but they were awaiting the return of Clark, with the child seat [DE 1, ¶¶ 19-22].

2

While waiting for Clark, the Deputies communicated with both the Plaintiff, Floyd, and Dardy. As the Complaint alleges, the Deputies determined that Dardy had a warrant for her arrest. Deputy Cady then asked Floyd for his identification. [DE 1, ¶¶ 24-25]. The Complaint further acknowledges that Floyd refused to show his identification and the conversation escalated. The Plaintiff's allegations include the dialogue between the Deputy and Floyd in which Deputy Cady (who had been called to the premises because of suspected criminal mischief and vandalism, who had also learned that the female individual had a warrant for her arrest) made it clear that he was, at least in part, seeking identification before handing the child to Floyd and in order to identify the person taking the nine-month old child from the scene.

According to Plaintiffs' Complaint, Deputy Bridgman secured care of the nine month old child while Deputy Cady sought Floyd's identification. [DE 1, ¶ 26]. After the Deputy finally obtained identification, the child was returned to Floyd and he subsequently left the premises without being otherwise detained or subjected to further investigation or arrest. [DE 1, ¶¶ 35, 36].

## III.    Motion to Dismiss Standard of Review

"When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff." *Gomez v. Wells Fargo Bank N.A.*, Case No. 13-23420-CIV-DIMITROULEAS, 2014 U.S. Dist. LEXIS 2871, at *5 (S.D. Fla. Jan. 7, 2014); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Under the Federal Rules of Civil Procedure Rule 12(b)(6), a motion to dismiss will be awarded if the plaintiff fails to state a claim in which relief can be granted." *Gomez v. Wells Fargo Bank N.A.*, at *5. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S 544, 570 (2007) (*abrogating Conley*, 355 U.S at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S at 556).

The Court need not to take allegations as true if they were merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S at n. 8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1947), *overruled on other grounds, Davis v. Scheuer*, 468 U.S 183 (1984)).

Relatedly, "[c]ourts are generally urged to apply the affirmative defense of qualified immunity at the earliest possible state in litigation, including at dismissal stage." *Andrade v. Miami Dade County*, Case NO.: 09-23220-CIV-LENARD/TURNOFF, 2010 U.S. Dist. LEXIS 113490, at *13 (S.D. Fla. Sept. 30, 2010); *see Marsh v. Butler County*., 268 F.3d 1014, 1022 (11th Cir. 2001). "Unless the plaintiff clearly alleges a violation of established law in his

4

complaint, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Andrade*, at *13.

IV. Argument

    A. **The Plaintiff's 1983 claims should be dismissed with prejudice as the Complaint fails to state a claim upon which relief can be granted. The Deputies had probable cause to believe that Floyd and his counterparts had committed a crime on the hotel premises and the stop and investigation were objectively reasonable under the circumstances.**

    The Plaintiff claims that he and his child were subjected to unlawful seizures which violated the Fourth Amendment (Counts I-III); that his First Amendment rights were somehow violated by the Deputies (Count IV); and that the act of removing his child from his arms for a few moments while securing his identification constituted a violation of his procedural due process rights, presumably under the Fourteenth Amendment (Count V). However, as described in detail below, during this questioning, which constituted a *Terry* stop or reasonable suspicion inquiry, the Deputies were permitted to ask for identification and neither of them violated the Plaintiff's constitutional rights, or those of his child.

    1. **There was no unlawful search or seizure under the Fourth Amendment (Counts I, II, III).**

    Plaintiff fails to state a claim for any violation of his constitutional rights, or those of his child, where the Deputies were engaged in their discretionary, lawful duties, and they had reasonable suspicion or arguable suspicion when they arrived at the hotel after being told that the Plaintiff had damaged the hotel room and that he and the others had been asked to vacate the premises. As will be discussed below, under the totality of circumstances, Deputy Cady was justified in asking Floyd to provide identification, Floyd's refusal to provide it was improper.

There was no improper search or seizure, and the Deputies' actions were reasonable under the circumstances.

"The Fourth Amendment protects individuals from *unreasonable* search and seizure." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). In *U.S. v. Perkins,* 348 F.3d 965, 969 (11th Cir. 2003), the Eleventh Circuit explained that there are three separate categories of police-citizen encounters: (1) "brief, consensual, and non-coercive interactions that do not require Fourth Amendment scrutiny"; (2) "legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied"; and, (3) "technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny." "A stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d, at 1277.

"Reasonable suspicion" entails some minimal level of objective justification for making a stop, that is, something more than inchoate or unparticularized suspicion or "hunch," but less than level of suspicion required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). In making a determination of whether reasonable suspicion exists for an investigative stop, the relevant inquiry involves whether the officer conducting the stop has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

The legality of a stop is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). An officer's actions during a stop must be "reasonably related in scope to the circumstances which justified the interference in the first place."' *Id.* (quoting *Terry v. Ohio,* 392 U.S. at 20). Additionally, "the duration of the stop must be limited to the time necessary to effectuate the purpose of the stop." *Id.* At bottom, the "touchstone of the Fourth Amendment is

6

reasonableness" which is measured by examining the totality of the circumstances.  *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Purcell*, 236 F.3d at 1279.

Here, both the duration and scope of the stop were reasonable. As noted above, the Deputies were called to the Red Roof Inn by management because of criminal mischief or vandalism. There was, at a minimum, probable cause to believe that Floyd, and the others, had engaged in criminal mischief. Florida Statute 806.13, titled, Criminal Mischief, states:  "A person commits the offense of criminal mischief if he or she willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto."

The Deputies were unable to escort the Plaintiff and Dardy from the premises because they had no car seat for the child. In the interim, it was entirely reasonable for them to ask both of them for identification, and once it became clear that Dardy had a warrant for her arrest, the Deputies were further justified in seeking identification from Floyd, particularly before allowing him to leave with the minor child. Again, the Deputies reasonably believed that Floyd had committed an offense, knew that Dardy had a warrant for her arrest, and were legally authorized to require identification (or at least objectively reasonable in doing so).

"[A] police officer's questioning, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation."  *Purcell*, at 1290 (quoting *United States v. Shabazz*, 933 F.2d 431, 436 (5th Cir. 1993) (holding mere questioning… is neither a search nor a seizure). *Id.* Questions which do not extend the duration of the initial seizure do not extend the scope of an otherwise constitutional stop.  *Id.   See also, Hancock v. Hobbs,* 967 F.2d 462, 469 (11th Cir. 1992)(finding that jury was properly instructed that there was probable cause to arrest a plaintiff who failed to show her identification); *Gainor v. Douglas Cty.*, Georgia, 59 F. Supp. 2d 1259

(N.D. Ga. 1998) (holding deputy's initial seizure of plaintiff, when he grabbed the latter, amounted to an investigatory stop for which only a reasonable suspicion of criminal activity was required; deputy demonstrated no intent to arrest plaintiff, but instead was asking only for some identification at the time the investigative stop).

It also bears noting that Floyd's actions in refusing to provide his identification gave rise to a reasonable suspicion that Floyd was resisting an officer without violence in violation of Florida Statute 806.13.  Florida Statute 806.13, titled, Resisting Officer Without Violence to His or Her Person states as follows: "Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Florida Commission on Offender Review or any administrative aide or supervisor employed by the commission; county probation officer; parole and probation supervisor; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083."

Even though the Plaintiff does not allege that excessive force was utilized here, he does challenge Deputy Cady's efforts to secure Floyd's identification and Deputy Bridgeman's actions in removing the child momentarily. Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. *Graham v. Connor* at 490 U.S. 386 (1989), quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Fourth Amendment jurisprudence has long recognized that the right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effectuate it. See *Terry v. Ohio,* 392 U.S., at 22–27, 88 S.Ct., at 1880–1883. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular, including whether he is actively resisting the officer or attempting to evade arrest by flight. *See Tennessee v. Garner,* 471 U.S., at 8–9, 105 S.Ct., at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

Claims that law enforcement officials have used improper force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable seizures," and must also be judged by reference to the Fourth Amendment's "reasonableness" standard, which is discussed in detail above. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871–72, 104 L. Ed. 2d 443 (1989). The Fourth Amendment "reasonableness" inquiry is based on a determination of whether the officers' actions are "objectively reasonable" in light of the facts and circumstances with which they are presented. Importantly, this reasonableness must be judged from the perspective of a reasonable officer on the scene, keeping in mind the fact that they are often forced to make split-second decisions about the amount of force necessary in a particular situation. *Id.*

In this case, the Deputies acted in a reasonable manner given the unique set of facts presented. The Plaintiff alleges that Deputy Cady restrained Floyd with both hands as Deputy Bridgeman removed the child.  Plaintiffs never allege that either Deputy ever struck, punched or

kicked.  The Deputies acted in a reasonable and manner in attempting to ascertain the identity of Floyd.  At most, the facts as alleged by Plaintiffs demonstrate a *de minimus* use of force during a reasonable suspicion stop or investigation. Application of *de minimis* force, without more, will not support a claim for a violation of the Fourth Amendment or state law torts. *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000).

### 2.   There was no violation of the First Amendment (Count IV).

The Plaintiff's First Amendment claim appears to be predicated on what he claims is his constitutional right to refuse to show identification. However, as set forth above, this was not a consensual encounter between Floyd and the Deputies but, rather, an investigatory *Terry* stop which is subject to limited scrutiny. Where the Deputies had probable cause to suspect that a crime had been committed, their request for identification was reasonable. Where they had information that Floyd's friend and co-guest at the hotel had a warrant for her arrest, and that Floyd would be leaving with the minor child, the Deputies had additional justification for requesting identification. Contrary to Floyd's contention, under these circumstances, he did not have the "right" to refuse to show his identification to the Deputies, and his refusal to do so justified the Deputies' actions in this case. They did not violate his First Amendment rights by requiring him to show that identification, or using *de minimus* force in obtaining it. As the courts have recognized, there is very little case law that discusses when the carrying out of a *Terry* stop might impinge upon a plaintiff's First Amendment rights, but the Plaintiff certainly has not established such a claim here. *Kilpatrick v. U.S.,* Case No. 3:06cv158/LAC,  2009 WL 5215585 *6 (N.D.Fla. Dec. 29, 2009).

### 3. There was no violation of Procedural Due Process or the Fourteenth Amendment (Count V).

Next, the Plaintiff asserts that his procedural due process rights were violated when his child was taken from his arms by Deputy Bridgeman. Under the Fourteenth Amendment, due process is a flexible concept, and what procedures due process may require under any given set of circumstances must begin with determination of the precise nature of the government function involved as well as the private interest that has purportedly been affected by governmental action. *Doe v. Kearney*, 329 F.3d 1286 (11th Cir. 2003). The law is clear, however, that when a government official has probable cause to believe that a child is in danger, the official does not violate the Constitution when he or she the temporarily removes the children from the custody their parents, even without a court order. *Id.*

This case can hardly even be analogized to a more extreme situation where a governmental official removes custody of a child from his or her parents. Nevertheless, under the Plaintiff's own facts, it was reasonable for Deputy Bridgeman to believe that the child might be in danger, and remove her from Floyd's arms, as the interaction between Floyd and Deputy Cady escalated. Even under the Plaintiff's own version of the facts, the child was only taken from his hands for a matter of moments at a time when the Plaintiff was (1) refusing to comply with Deputy Cady's lawful instructions to provide his identification; (2) raising his voice to Deputy Cady; and (3) engaged in an altercation with Deputy Cady. Thus, it was entirely reasonable for Deputy Bridgeman to believe that the child was in danger.

While the Defendants have been unable to find a case with similar facts, where a child was removed from a parent's arms during an investigative stop, this case is a far cry from those where the courts have found a violation of a parent's procedural due process rights. However, a

review of the facts presented by the Plaintiff shows that he has failed to state a procedural due process violation where the Deputies' actions were reasonable under the circumstances.

### B.  The Deputies are entitled to qualified immunity.

As the Court knows, qualified immunity "'allow[s] government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" *Brown v. City of Huntsville*, 608 F.3d 724, 733 (11th Cir. 2010) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). "A successful *section 1983* action requires that the plaintiff show [he] was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).

"In order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee*, 284 F.3d at 1194 (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). There is no dispute that these Deputies were acting in the scope of their discretionary authority here. "After the defendant has established that he was acting in a discretionary capacity, 'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015) (quoting *Lee*, 284 F.3d at 1194).  "To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law."

12

*Perez v. City of Sweetwater*, Case No. 16-24267-CIV-ALTONAGA, 2016 U.S. Dist. LEXIS 178102, at *7 (S.D. Fla. Dec. 22, 2016) (citations omitted).

In ruling on qualified immunity, courts engage in a two-step analysis: (1) whether the evidence, viewed in the light most favorable to the party asserting the injury, shows that the official's conduct violated a constitutional right; and if so, (2) whether the right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As set forth above, the Defendants respectfully submit that their actions during this investigatory stop were reasonable as a matter of law and, as such, they are entitled to qualified immunity as there has been no constitutional violation. Indeed, even if an officer who mistakenly concludes that there was reasonable suspicion to conduct a *Terry* stop is entitled to qualified immunity. *Jackson v. Sauls,* 206 F. 3d 1156, 1166 (11th Cir. 2000)(discussing arguable reasonable suspicion).

In addition, the Defendants further contend that they did not violate any law that is clearly established and that they are entitled to qualified immunity under the second prong of the test as well. In order to determine whether a right is clearly established, this Court should look to the precedent of the Supreme Court, the Eleventh Circuit, and the Florida Supreme Court "interpreting and applying the law in similar circumstances." *See, e.g., Forrester v. Stanley,* 394 Fed. Appx. 673 (11th Cir. 2010)(quoting *Oliver v. Fiorino,* 586 Fed. 3d 898, 907 (11th Cir. 2009)). The relevant inquiry is to ask whether the law is sufficiently clear that a reasonable officer would understand that what he is doing violates that right. *Id.* The Defendants respectfully submit that there is no clearly established precedent that put Deputy Cady or Deputy Bridgeman on notice that their actions in asking for, or obtaining, the Plaintiff's identification, or in removing his child from his arms during a scuffle with an officer, would violate his (or the child's) constitutional rights. *See, e.g., Moore v. Seminole County,* Case No. 6:13-cv-224-Orl-

31GJK, 2014 WL 4278744 *5 (M.D. Fla. Aug. 29, 2014)(granting qualified immunity to office where there was no precedent to put reasonable officer on notice that the *Terry* stop violated clearly established law).

### C.  The state law battery claims also cannot proceed.

If the Court dismisses the federal claims on the basis that the Deputies had reasonable suspicion and probable cause, then it should similarly dismiss with prejudice the state law battery claims against the Deputies and Sheriff Tony. The case law is clear that during an officer's attempt to confirm or dispel reasonable suspicion, or effectuating an arrest, some force may, and sometimes must, be used. "This Circuit has concluded that the standard for determining the existence of probable cause is the same under both Florida and federal law—whether 'a reasonable man would have believed probable cause existed had he known all of the facts known by the officer.'" *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (quoting *United States v. Ullrich*, 580 F.2d 765, 769 (5th Cir. 1978)). If this Court finds that "probable cause exist[s] as a matter of law," "the existence of such probable cause defeats both the federal and state claims." *Id.* at 1437.

Alternatively, the battery claims against the Deputies themselves cannot stand. Official immunity is "a species of sovereign immunity that shields officers from tort liability unless the officer 'acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Paez*, 915 F.3d at 1291 (quoting Fla. Stat. § 768.28(9)(a)). The "plain language" of this statute "states that a government employee cannot be 'named as a defendant' in an action arising out of his employment unless he acted maliciously or in bad faith." *Parker v. Am. Traffic Sol'ns, Inc.*, 835 F.3d 1363, 1369 (11th Cir. 2016). Courts construing the bad faith prong of § 768.28 use an "actual malice" standard, *Parker v. State Bd. of*

14

*Regents ex rel. Fla. State Univ.*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998), which means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent," *Reed v. State*, 837 So. 2d 366, 368–69 (Fla. 2002). The conduct complained of must be "'worse than gross negligence,' and 'more reprehensible and unacceptable than mere intentional conduct.'" *Barnett v. MacArthur*, 715 F. App'x 894, 904 n.9 (11th Cir. 2017) (quoting *Sierra v. Associated Marine Insts., Inc.*, 850 So. 2d 582, 593 (Fla. 5th DCA 2003), and *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987)). "The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement," which "cannot be satisfied by mere conclusory allegations." *Brown v. McKinnon*, 964 So. 2d 173, 175 (Fla. 3d DCA 2007). Here, the Plaintiff's Complaint is comprised of bare bones facts and conclusory allegations. It contains no "good faith allegation . . . that the [Deputies] either acted outside the scope of [their] employment or in bad faith." *Id.* "Without [that] support, the [claims] must fail." *Id. See also, Kraus v. Martin County Sheriff's Office,* 753 Fed. Appx. 668 (11th Cir. 2018).

## <u>CONCLUSION</u>

Wherefore, based on the foregoing, Defendants respectfully request that all counts in Plaintiff's Complaint be dismissed, with prejudice, and this Court order such other relief as may be proper under the circumstances.

<u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so or has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, but has been unable to do so.

Dated: May 28, 2020                           Respectfully submitted,

/s/ Kenneth J. Miller
KENNETH J. MILLER
FBN: 865583
Email:  Service@hpslegal.com
HALICZER PETTIS & SCHWAMM, P.A.
One Financial Plaza, Seventh Floor
100 SE 3rd Avenue
Fort Lauderdale, FL 33394
*Attorneys for Defendants*
Telephone:  954-523-9922
Facsimile:  954-522-2512

16

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 28th day of May, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Kenneth J. Miller*
KENNETH J. MILLER

17

<u>MAILING LIST</u>

ALLEN FLOYD, ET AL. v. JAMES CADY, ET AL
CASE NO. 20-CV-60750

Hugh L. Koerner, Esq.
HUGH L. KOERNER, PA
Sheridan Executive Center
3475 Sheridan Street – Suite 208
Hollywood, FL  33321
*Counsel for Plaintiffs*
954-522-1235
954-522-1176 – FAX
EMAIL DESIGNATIONS:  hlklaw@hughkoerner.com